UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DEVIN M. KUGLER, | ) |
| Plaintiff, | ) |
| v. | ) 14-3085 |
| JUDITH ROTH, *et al.* | ) |
| Defendants. | ) |

### SUMMARY JUDGMENT OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and presently civilly committed at Rushville Treatment and Detention Facility, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging a Fourteenth Amendment violation for deliberate indifference to a serious mental health need. The matter comes before this Court for ruling on the Defendants' Motion for Summary Judgment. (Doc. 55). The motion is granted.

### PRELIMINARY MATTERS

Defendants filed a Motion for Leave to File Document under seal. (Doc. 57). Defendants seek to file a copy of Plaintiff's mental health records under seal. Plaintiff has not opposed this motion.

Nonetheless, the Court must make its own determination as to whether good cause exists for sealing the record.  See Bond v. Utreras, 585 F.3d 106, 1068 (7th Cir. 2009); Citizens First National Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 944 (7th Cir. 1999) (court must makes its own determination whether good cause exists for sealing the record, despite the parties' agreement); CDIL Local Rule 5.10(2) ("The Court does not approve of the filing of documents under seal as a general matter.  A party who has a legal basis for filing a document under seal without a prior court order must electronically file a motion for leave to file under seal.").  Upon review, these records contain information regarding Plaintiff's mental health conditions, subsequent treatment, and describe the details of the criminal offense that predicated Plaintiff's commitment pursuant to the Illinois Sexually Violent Persons Commitment Act.  Plaintiff has placed his mental health and treatment at issue, but disclosure of this information into the public realm would not serve the ends of justice.  Therefore, Defendants' motion is granted.

   Plaintiff's motions to strike are also before the Court.  (Docs. 65, 66).  In these motions, Plaintiff seeks to strike an affidavit

attached as an exhibit to Defendants' Reply brief. Plaintiff also seeks to strike the Reply brief itself. In his motion, Plaintiff argues against the veracity of the information contained in the affidavit, but does not otherwise provide a legal basis for the Court to strike the Defendants' Reply or the exhibits contained therein. Plaintiff's motions are therefore denied.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**FACTS**

Plaintiff is civilly committed at Rushville Treatment and Detention Facility ("Rushville" or "TDF") pursuant to the Illinois Sexually Violent Persons Commitment Act, 725 Ill. Comp. Stat. § 207/1 et seq. Defendant is a licensed clinical therapist and, at all relevant times, the leader (supervisor) of Plaintiff's treatment team.

Residents who consent to treatment at Rushville are assigned to teams designated by color (e.g. blue team, orange team, etc.). Each treatment team consists of a team leader and several clinical staff members. Defendant is the orange team leader. As such, she supervises the clinical staff on the orange team and works with security staff to organize and provide treatment for residents on that team.

Treatment at Rushville consists of five phases: (1) assessment; (2) accepting responsibility; (3) self-application; (4) incorporation; and (5) transition. Within these phases, there are different levels of programming: engagement, disclosure, post-disclosure, and Phase V group. At one end of the spectrum, engagement is designated for

those residents who are new to treatment, or whose progress stalls during the course of treatment. On the other end, Phase V group prepares residents for release from the facility. Plaintiff's claims arise from his interactions with staff and other residents in his post-disclosure group.

In late February 2014, Plaintiff's participation in post-disclosure group was discontinued after Plaintiff admittedly developed romantic feelings for one of the female facilitators of the group who was also assigned as Plaintiff's primary therapist. Plaintiff admitted to this therapist that he was falling in love with her, that he had had sexual fantasies about her, and had masturbated to those fantasies. Pl.'s Dep. 30:22-31:1. Plaintiff believed he had a future outside the facility with this therapist. *Id.* 33:6-9.

Aside from Plaintiff's romantic feelings, several other events contributed to Plaintiff's removal from post-disclosure group. For example, Plaintiff claimed that revenge, not sexual desire, motivated his commission of the criminal offense underlying his civil commitment. Therefore, Plaintiff claimed that certain treatment goals, like acknowledgement of sexually deviant arousal, did not

apply to him.  Pl.'s Dep. 39:3-42:10.  When confronted by therapists and other resident group members about these beliefs, Plaintiff reported that he felt harassed and bullied by the feedback.  Pl.'s Dep. 20:20-21:3.  After Plaintiff directed derogatory language at others present during a group session, Defendant informed Plaintiff on February 12, 2014 that he would be excused from group participation until the staff could meet to discuss Plaintiff's issues. (Doc. 59-1 at 32).

    Later that day, Plaintiff was placed in a mental health observation cell after security had thwarted his attempts to escape the facility by walking out the front door.  Defendant conducted a mental health assessment.  (Doc. 59-1 at 30-31).  Plaintiff was agitated, crying, and visibly distraught.  Plaintiff denied that he had previously met with Defendant earlier that day and stated that he would kill staff members in order to get out of the facility.  Plaintiff threatened to physically harm any staff member who opened the chuckhole on his cell.  Plaintiff was placed on Mental Health Status to monitor his condition.

    Defendant met with Plaintiff over the course of the next week, and Plaintiff's condition gradually improved.  Plaintiff attributed his

behavior to issues related to his therapy group. On February 24, 2014, Plaintiff was assigned a new male therapist. On February 26, 2014, Defendant met with Plaintiff and outlined specific treatment goals to focus on before Plaintiff returned to post-disclosure group. Plaintiff became agitated, threatened legal action, and kicked the door to his room.

Over the next month or so, Plaintiff continued to exhibit signs of mood instability in his contacts with his primary therapist and Defendant. Plaintiff's treatment team recommended that Plaintiff not return to post-disclosure group because of these issues. During this time, Plaintiff also suffered a scrape on his wrist, allegedly self-inflicted by Plaintiff's fingernail. Staff provided Plaintiff with a bandage for the scrape.

## ANALYSIS

As a civil detainee, Plaintiff's claim arises under the Fourteenth Amendment, rather than the Eighth Amendment's proscription against cruel and unusual punishment. Mayoral v. Sheahan, 245 F.2d 934, 938 (7th Cir. 2001). Despite this distinction, there exists "little practical difference between the two

standards." Id. (quoting Weiss v. Cooley, 230 F.3d 1027, 1032 (7th Cir. 2000)).

To prevail on a claim for inadequate medical care, the Plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976). Neither party disputes that Plaintiff has shown he suffers from a serious medical/mental health need. See also Sanville v. McCaughtry, 266 F.3d 724, 734 (7th Cir. 2001) ("The need for a mental illness to be treated could certainly be considered a serious medical need.").

Deliberate indifference is more than negligence, but does not require the plaintiff to show that the defendants intended to cause harm. Mayoral v. Sheehan, 245 F.3d 934, 938 (7th Cir. 2001). Liability attaches when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiff is entitled to humane conditions of confinement and to adequate treatment for his serious mental disorder, as

determined by an appropriate professional exercising professional judgment.  See Youngberg v. Romeo, 457 U.S. 307, 323 (1982) (decisions by professionals working at mental health institution are afforded deference and violate the Constitution only if professional judgment not exercised).  Plaintiff is not entitled to dictate the treatment he receives.  Cf. Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) ("[T]he Constitution is not a medical code that mandates specific treatment.").  Plaintiff's constitutional rights are violated only if the treatment decisions are a "substantial departure from accepted professional judgment." Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2009).

    Plaintiff challenges his removal from post-disclosure group.  In support of this argument, Plaintiff states that he did not violate the boundaries of his female primary therapist by professing his love for her and admitting to his sexual fantasies.  Defendant argues to the contrary, but neither party has actually defined the boundaries Plaintiff is alleged to have crossed.  Even so, Plaintiff's issues with his post-disclosure group extended further than just his infatuation with his primary therapist.  Plaintiff provided several exhibits that show he communicated to his treatment team his position that

certain aspects of therapy did not apply to him, that he attempted to commit self-harm by stabbing himself with a pen during a group session, and that he wanted to kill another group member.  (Doc. 61-4 at 4-6; 61-7 at 2-4).  Several of these exhibits note Plaintiff's resistance to group feedback.

This information would have been available to Defendant at the time Plaintiff's treatment team recommended that he not return to, or at least be suspended from, group therapy.  Defendant also had several personal contacts with Plaintiff while he was housed in the mental health after his attempts to leave the facility.  In light of this information, and the fact that Plaintiff's removal from post-disclosure group was not solely within Defendant's discretion, the Court finds that no reasonable juror could conclude that Defendant acted outside the bounds of accepted professional judgment.

**IT IS THEREFORE ORDERED:**

1) **Defendant's Motion for Order for Leave to File Exhibits Under Seal [57] is GRANTED.**

2) **Plaintiff's Motions to Strike [65][66] are DENIED.**

3) **Defendant's Motion for Summary Judgment [55] is GRANTED.  The clerk of the court is directed to enter judgment in favor of Defendant and against Plaintiff.  All pending motions not addressed below are denied as moot,**

and this case is terminated, with the parties to bear their own costs.

4) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  F<small>ED</small>. R. A<small>PP</small>. P. 4(a)(4).  A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. <u>See</u> F<small>ED</small>. R. A<small>PP</small>. P. 24(a)(1)(c); see also <u>Celske v Edwards</u>, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); <u>Walker v. O'Brien</u>, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose...has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED:     March 9, 2016.

FOR THE COURT:

*s/Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE